Good morning, your honor. My name is Michael Ryan. I'm with K&L Gates and I represent the October 22nd Coalition in this matter. With me here today at council table is Ryan Reddekopp from K&L Gates and Aaron Kaplan from the ACLU of Washington. Also with me here today are several members of the October 22nd Coalition. May it please the court, the City of Seattle's parade ordinance is unconstitutional. By administering the parade ordinance in a manner that is neither tied to the plain language of the statute or guided by any narrow, objective, or definite standards, the City of Seattle has consistently relegated constitutionally protected speech to the sidewalk. Today my arguments will focus on two main points. First, the plain language of the statute, and second, the lack of any standards in the statute. The city's desire to place marchers on the sidewalk goes beyond the plain language of the statute. Thus, the city is regulating constitutionally protected speech in a manner that simply is not envisioned by the language of the statute. Second... Are you saying that there's a violation of the city's ordinance? I'm saying that what the city has done or what the police department has done in particular has essentially read the word sidewalk into the ordinance. And what we're saying is that when you go to apply for a permit, you're applying for a permit to occur on a street or alley. So you're saying there's an authoritative interpretation of the ordinance that says the sidewalk can be used without any closing of the streets? Right. And that you're basing that on the pattern of field decisions? I'm basing it on the pattern of field decisions, which are evident by the parade permits, but we're also basing it on the 30b-6 testimony of the city when at deposition he was asked, is it the city's preference to place marchers on the sidewalk even if they have a valid permit to be in the street? And his answer was one word, absolutely. So the city has taken the threadbare language of the statute, which applies only to streets or alleys, and has essentially written itself a blank check to place any group on the sidewalk whenever they deem it necessary or appropriate. And assuming that that's the case, assuming that that's how we would read the statute, then explain how that makes it a violation of the First Amendment rights. Well, I think what the problem is, I think that if the court were to rule that the statute simply doesn't allow sidewalk marches and that the city has been acting outside of the scope of the statute and was to declare that the statute doesn't allow for sidewalk marches, it may be able to avoid the difficult constitute questions that the rest of this case presents. But the constitutional issue arises primarily from the lack of standards, because that last sentence in the statute speaks of modifications in the interest of traffic and pedestrian safety. There are absolutely no guidelines or standards or well-established practice which define that. So – Well, what's your sidewalk argument first, if I could just make sure I understand? Sure. What is that argument? Well, the first part of the argument is that the statute simply doesn't allow for it and that the city has been acting outside of the bounds of the statute by doing it. Well, that would be the state law issue, right? That was a violation of their – they were acting in violation of their ordinance. Right. Okay, so that's not our issue, right? Well, what I'm asking – what happened is before the district court, we made the argument that the sidewalks simply were not within the purview of the statute. And what the district court did in a footnote – and I believe it was footnote number four to its opinion – said, well, I'm going to construe the statute in a manner that says if you put someone on the sidewalk and stop traffic lights for them, that that is a closure of streets and therefore it is a parade. So now we have a judicial construction of the statute made by the district court which essentially places a stamp of approval on the city's policy with respect to the sidewalk. So I think that issue is before the court because we have a judicial decision saying this is how you interpret the statute. So if – as I understand your position, if the ordinance is read literally, if you – if a person wanted to come rally two blocks from here and then come down and hold a protest in front of Park Place in the area out there, and they were going to – say there are 50 people who were going to congregate two blocks from here, walk the two blocks, obey the traffic signals, and congregate out in front of Park Place carrying signs protesting, communicating traffic and so on, that they would not need any permit whatsoever. If they were on the sidewalk and they were obeying traffic signals, they don't need a permit. They don't need a permit. Okay. So then – but if they – but if the – if it turns out that in order to get across the – these off-ramp type streets here, the police department is concerned that there's going to be congestion or interference with traffic flow, and the marchers are concerned that they – there's danger on these Seattle streets that is apparently for bicyclists, we understand, from yesterday's paper – I'm just trying to understand where your argument goes – then if they want some kind of traffic control, or the city deems traffic control necessary, does that then trigger the statute, or you're saying, no, as long as they're staying on the sidewalks, then the ordinance doesn't apply and there's no permit necessary? If they're staying on the sidewalks and obeying traffic signals – I'm saying if they don't. Now I've changed it. I've said, now they want some kind of traffic control so they don't have to obey the traffic signals. Now, you're saying they can't – it can't be a permit situation because they can't leverage the traffic control into saying it's now part of the streets. I understand, and into the court's hypothetical, the group actually wants to be on the sidewalk and not in the street. Yes. And I guess if a group is going to say, I have no problem being on the sidewalk to do my parade, then there's no – no one's there to raise an issue as to the constitutionality of being placed on the street. But what you have in Seattle – Well, no, the police department would, because the marchers want traffic control. They want to get their people, their 50 people, from point A to point B, and they want the police department to regulate traffic so they don't have to all bottle up at a signal that they all get there at one time. Now is it under the ordinance, or is this – No, because when you go to apply for a parade permit, you're applying for a permit to occur on a street or alley. You're not applying for one that occurs on a sidewalk. And that's the problem here. So there's no – there's no ordinance, then, that covers my hypothetical? No. We don't think there is. The city thinks there is. The city thinks the parade ordinance does, and that's why we're here. And one of the issues that – the main issues we have that raises serious constitutional questions is that the cities, in granting permits or in modifying permits, doesn't have any well-established practice that says, we only consider these factors when we're making a modification. Doesn't the ordinance set out the factors? They can modify the place and hour of formation, the proposed line, movement, or march, and the scheduled starting time, so just those three factors, in the interest of vehicular or pedestrian traffic safety. So it seems like it's laid out right in the ordinance, what they can consider and what the factors are. Well, what they say is that we can only consider when something is in the interest of traffic and pedestrian safety. Now, they have read that word modification to mean we can put you on the sidewalk whenever we want to. They don't have to tie it to any decision. I mean, the problem here is that the city is not required to write any decision down when they make a modification. Well, and assuming that that's correct, assuming that that is the authority of interpretation of this ordinance, I guess that gets back to my original question. Explain to me why that would make this ordinance unconstitutional. Well, the phrase, in the interest of traffic safety, is simply too vague. It's not something that's easily defined. Assuming they could then put them on the sidewalk, and I guess there would still have to be some street closure according to the definition of parade, but assuming that they could whenever they deemed it necessary, how does that make the ordinance unconstitutional? Because there's no discretion, there's no standards that limit the discretion. There's no, there's nothing that tells an individual police officer, look, when you're making this decision, you need to consider several different factors, or you can only consider these factors. I mean, that's the difficulty with parade permitting schemes. Anytime you condition a license to speak, and you have to go to the government. But they can't deny the permit. I mean, that's what it says. It shall grant, the chief shall grant a permit. So we know they can't deny the permit, and so the only, I guess, effect is they could put it on the sidewalk, and that's, that was the question I had. What's the problem with that? Well, the reality is that they have denied permits in the past, because they have basically said, they've admitted that if you're going to go on the sidewalk and you do not get traffic control devices, you don't need a permit to do that. We've, we've pointed to evidence of 18 different permits over the course of the years, which basically say, if you, if X number of people don't show up, you will be put on the sidewalk, and you will not get traffic control devices. Those are effective and conditional denials. And are you saying we should read that into the ordinance? Because if, if we're looking at a facial attack on the ordinance, I'm just interested in what the ordinance says, and whether the ordinance and all of its applications is unconstitutional. So, so this evidence, you know, this came up on summary judgment motion. This, this evidence that may be in the record somewhere doesn't seem to have bearing on the interpretation of the statute. Actually, Your Honor, in, in Foresight, the U.S. Supreme Court dealt with this exact issue, and they said, when you're assessing a facial challenge in the context of, of a parade permitting scheme or a permitting scheme that, that allegedly vests unbridled discretion in the interpretation of the statute. That holding was just reaffirmed by this Court several weeks ago in the Burger v. City of Seattle case, where they said, look, we don't have any past history or past implementation to draw upon, so we're going to focus on the language. But here we have a, a large body of past practices and past implementation, which then become part of what the Court needs to look at on a facial challenge. But, but in Tennyson, we said we only look at that to narrow the interpretation to, to save it, to make it constitutional. I mean, Foresight also says that looking at the facial attacks on the discretion granted a decision maker are not dependent on the facts surrounding any particular permit decision. It's not merely the sporadic abuse of power by the censor, but the pervasive threat inherent in its very existence that constitutes the danger to freedom of discussion. So Foresight also says we can't consider the actual implementation in order to determine whether the ordinance itself on its face is invalid. But, but what the Court is there saying is that in that case, it is the very possibility of the exercise of discretion that, that is, that rises to the level of unconstitutionality. It's not the actual implementation of it, which may also be unconstitutional, but it's the very fact that such discretion exists. Because what the doctrine of unbridled discretion prevents again, prevents against, is allowing administrators, parade administrators, to hide behind otherwise benign facial language. All right. I think we get that point. But I'm still trying to zero in. Judge Acuda pointed out there are various factors identified, and the statute on its face talks about in the interest of traffic and pedestrian safety. Now, and I think it's Thomas where the language was found to be sufficient, unreasonable danger to the health or safety of the applicant. Why isn't, and that was held to be a cabin, sufficient cabin on the discretion of the decision maker. What's the difference between Thomas' approval of that formulation and in the interest of traffic and pedestrian safety? I think Thomas is distinguishable on three grounds. The first ground is that Thomas Let's talk about the language. It may be distinguishable because there's no review process. I want to know what's distinguishable based on that language. In Thomas, the language was an unreasonable risk to health and safety. Here, it's just the interest of traffic safety. It is hard to imagine any parade that doesn't somehow touch upon the interests of traffic and pedestrian safety. At least in Thomas, what the court was looking at was a statute that says, look, there's going to be some type of quantifiable risk here. There needs to be some type of situation that's going to take it out of the norm. But with respect to the phrase in the interest of, that can be anything. So there's absolutely no standards governing that. And another thing, in Thomas, the court made it very clear. They warned. They said, look, this language is okay. But if and when we face a pattern of unlawful favoritism, we're going to take a closer look at it. That's on an as-applied basis. Well, I think that that's correct. But as the court in the plain dealer case said that when you have an as-applied challenge, it simply doesn't work in these contexts for several reasons. First, there's a risk of self-censorship by the people who are engaging in the protected activity. Second, it makes it virtually impossible for a reviewing court to exercise effective judicial review when there are no standards to check that discretion against. And what you're left with is the post hoc rationalizations of the people making decisions. And third, and perhaps most importantly, is that once you lose that right to speak, it is forever lost. Okay. So let's move on then, because your time's running. Can I reserve four minutes? Yes. Please address what else about, besides the in the interest of, is there anything else about the ordinance that is constitutionally flawed? Well, I think that the way the modification provision is written, it doesn't ever explain, it doesn't give those implementing the statute with any manner in which to determine whether or not when to make a modification. So it's that last sentence of the statute that's problematic. I mean, we have no problem with the statute as it's written, but what we have a problem with is the way it's been interpreted and applied over the years. So you're not, the fact that there's no administrative review from the initial permit, that doesn't bother you? No, that bothers me, the fact that there's no... The statute as written doesn't include that. Right. You do object, you know, you've got to get your argument focused here, because this is hard enough. Are you challenging the language of the statute, or are you now blending what comes dangerously close to an as-applied challenge? So we're talking about the facial challenge to the statute. Okay, so you're saying that the interest of is unfettered discretion, basically. Right. Distinguish it from Thomas. There's no provision for an administrative review. Now, there's not going to be an administrative review when a police officer on the line of march is faced with a situation where there is danger to the marchers and puts them on the sidewalk to avoid it. So is the statute flawed because it doesn't have any procedural review or not? The statute is flawed for four reasons. One, it's the language that we've already talked about. Second is that, as the Thomas court made clear and the court in the G.K. Travel case recognized, there are essentially three or four things that basically cabin discretion. The first is standards, which are absent here. Second is the requirement that when a decision is made, that it be written down and documented, which allows for effective judicial review. And third is the ability to appeal. Now, yes, I understand that when someone shows up the day of and they all of a sudden change the line of movement and put them on the sidewalk, they have absolutely no way to appeal that. That's unappealable. The only way to ever get redressed in that situation is to go to court. But the way this statute works is you go in and you get a permit. And then several weeks later, you have your parade. So if they changed everything at the front end, it might be a different situation. But they don't do that. They hold back the power, and then when you get there to march, they say, well, now you have to go on the sidewalk. But they're not required to write anything down or ever explain why they did. And also what takes it out of Thomas and the G.K. Travel case is that there simply, in those cases, was absolutely no evidence of the city's past practices and implementation that even hinted remotely at unlawful favoritism. Here, by contrast, there's a significant number of permits in the record suggesting that such favoritism exists. The district court, in addressing the as-applied claim, noticed that there was a widespread practice, that such conditions seem to be disproportionately placed upon political groups, and it wasn't placed on sports groups. So all of the factors that made those statutes constitutional in Thomas and G.K. Travel are simply absent from this statute. And if I may, if I could reserve the remainder of my time for rebuttal. Thank you. Good morning, Your Honor. May it please the Court. My name is Carlton Sue, representing the City of Seattle. This is a facial challenge, and the as-applied claims are not at issue. They were dismissed. So whether the police violated Seattle's ordinances or the Constitution by placing marchers on the street on October 22, 2003, is not at issue. What is at issue is whether Seattle's parade ordinances protect the free speech rights of paraders. They do. Seattle's ordinances are unique. They afford very little discretion. In fact, I have found no other permit scheme that affords as little. Really? Even in the Thomas. Even the Santa Monica ordinance? Well, perhaps that's one you'd have to elucidate for me, Your Honor. The Santa Monica bonds opinion of this Court, didn't their ordinance have more strictures and more definition in its terms? Your Honor, this ordinance has just as much definition as far as the terms, and I'm referring to the standard of pedestrian and vehicular traffic. What does in the interest of? What does in the interest mean? Every ordinance, Your Honor, has to be read with a standard of reasonableness, and, in fact, this Court a few weeks ago in the Berger v. City of Seattle stated, quote, unquote, every reasonable construction must be resorted to in order to save from unconstitutionality. That was from the Berger case. So what we have in this case is we have in the interest of traffic and pedestrian safety, and there's evidence suggesting that the marchers are frequently placed on the sidewalk on the exercise of either the initial permit or on scene, march here but just generally. So what do we do with that? Your Honor. You're basically moving marchers off the street and onto the sidewalks, and there is evidence that that is indeed what the Seattle Police Department favors. Seattle only moves marchers onto the sidewalk when under a standard of pedestrian and vehicular traffic safety. In other words, on its face. Yeah. How do we know what it was in the permit situation as to what caused them to make that judgment when they're initially put that decision is imposed upon? Who reviews that? Who articulates it? Well, that question, Your Honor, is actually answered in every as-applied challenge that would come along. No, it also has to be answered in a facial challenge if we look at the Thomas case, because there the court went on to talk about the fact that there has to be, here we have the standard, the unreasonable threat to safety, but it also goes on to talk about a written decision and a level of administrative review before you have to get to the courts. And where is that in the Seattle ordinance? Well, first of all, the Thomas case, Your Honor, did not require written decisions. They just noted that that was the pattern. Any case in which this court or the Supreme Court has upheld a facial challenge where there were no other aspects other than just a statement comparable to what you say is the narrowly drawn strictest ordinance in the interest of traffic and vehicular safety. What case has upheld a facial challenge where there's no procedural process to make the decision maker articulate the basis for the restriction and no administrative review? I go back to one of the original cases nearly 70 years ago, Your Honor, Cox v. New Hampshire. In that case, there was no standard even set in the written language of the ordinance itself, but the U.S. Supreme Court accepted the interpretation of the state court, which imposed a standard of reasonableness on that ordinance. And despite the Thomas case having talked about the fact that the Chicago Parks regulation did provide for a requirement of written reasons and an appeal process, they did not impose such a requirement. In this case, however, Your Honor, I would like to address the fact that there is an appeal process available here in this ordinance. Because a parade is by definition a special event under Seattle's special event ordinance, Chapter 15.52 of the Seattle Municipal Code, it is subject to the special event ordinance, which affords an appeal which is even, if you compare it to the Thomas v. Chicago case, Your Honor, where in Thomas that regulation allowed for an appeal and a decision within 14 days. Seattle's special events ordinance allows for an appeal and a decision within five days. Now, the Thomas v. Chicago case also pointed out that in a parade permit system or a permit system, there is no need for an extraordinary appeal process as would be necessary when you're talking about a censorship of pure speech prior to the actual speech occurring. In a permit system, the appeal process need merely be reasonable, and Seattle's appeal process is better than the appeal process that was approved of in the Thomas v. Chicago case. I'm sorry. In Thomas, there was grounds for denying these permits, whereas in the Seattle ordinance, there's no grounds for denial. The police has to grant it. How does that affect our analysis of what procedures are necessary? Thank you, Your Honor. That's sort of what I was getting to in the beginning and what makes Seattle's ordinance unique. There is no grounds for denial. There's no grounds for revocation. There's no fee to pay. If you want a march in the city of Seattle, you will get a march in the city of Seattle. Most time, place, and manner ordinances don't deny. That's the whole basis for having a lesser or a more relaxed standard of particularity. But even in Thomas or in Seattle, there is a restriction on the method and manner of speech. You still have time, place, and manner criteria. Exactly, Your Honor. So why, under this ordinance, should the chief of police in the permitting process be allowed to say, we are going to require that your parade be on the sidewalks because we decide that that's necessary for pedestrian or traffic safety? Where do those decisions get recorded as to the basis? I was a L.A. police commissioner. We had a Martin Luther King parade throughout the streets of Los Angeles. The parade organizers had to get a permit.  They were complaining because the LAPD had decided to put too many restrictions on the parade. They appealed to the police commission. That was the process. And then if they didn't like what we did, they could go into court. We had standards. I don't remember what the standards were. But here the chief of police makes a decision as far as I read the ordinance, and that's it. And then where do they go from there? You say it's the special events. What if there are fewer than 50 marchers? Special events requires you to have more than 50 marchers, doesn't it? Special events does require, does have a, in order to hold it, well, the definition of a special event means a gathering of 50 people or more. However, that same number limit is not in the parade permit ordinance. That's true. It isn't. So how do you get from there to using special events as your appeal process? Well, because the definition of special event includes a parade because it is action that impacts and requires substantial services of the city. And the way that the city has interpreted it is that if you want to appeal your parade permit, and that's where you get your written decision, Your Honor, the decision or the conditions perhaps, the minimum number of conditions, would be placed in the permit. Is there any evidence in the record that that's the process that's been followed by the city in terms of permitting parades, that if there's any concern, they go to a special events appeal and get a written decision? There is testimony in the record from the special events coordinator, Your Honor, Virginia Swanson, her deposition testimony. Which said what? She stated that, well, she described the process of getting a parade permit or a special events permit. But the ordinance itself. Now my question is, I'm just asking a factual question. If it's not in the record, it isn't. But you're engrafting upon the parade ordinance the special events permitting process and saying that that closes if there's a constitutional loophole on process, that closes it. Is there any evidence that that is, in fact, how the city has applied the two ordinances in tandem? Your Honor, there's no ---- Or is it just a theoretical that they could come under that and that would be it? I would say it's more than theoretical. It's required by the ordinances themselves. Well, there is the 50-person cutoff. It seems I may be misunderstanding the events ordinance. But it does seem to say you have to have at least 50, and then it also has the other conditions to satisfy. It may be, Your Honor, that this situation never has arisen because whenever usually, or to my knowledge, when somebody applies for a parade permit, they usually envision having more than 50 people. And so it's almost a given, I believe, that they are subject to ---- well, the city, anyway, interprets it as them having the appeal right under the special events. Would the special events appeal process address whether the police chief had placed marchers on the sidewalk? Yes, it would. Okay. The policy of placing marchers on the sidewalk is directly related to the standard of vehicular and pedestrian traffic safety. It's a safety in numbers policy. It makes sense because it is harder for the police to protect small numbers of people in a busy street than large numbers in a busy street. Police form a protective bubble. They put motorcycles in the front and the back. But it is difficult for motorcycles to travel at walking speed. There are necessarily going to be gaps, especially in a small group, and therefore it's the visibility and the girth of the group that makes a difference. And how many people is the cutoff? That depends on each situation, Your Honor, because each situation is different. Basically, you're saying that the Seattle ordinance and the testimony suggests, as I understand it, that the preference of the police department is that marchers, unless it's really a big march, marchers go on the sidewalk because it's all of the suggestions you make. Therefore, if they want to have a parade, the preference is that they be on sidewalks. No, that's incorrect. The chief of police testified that there are objective factors that they have to consider when deciding to place marchers on the sidewalk. The width of the street, the time of day, the weather, lighting, things like that. Vehicular and traffic safety. Do we accept what the chief says as the authoritative construction of the statute? Is that a binding determination? He is the top administrator of the police department, Your Honor. Traffic safety is not a vague notion. It's clear to every licensed driver who drives a car and who drives in a safe manner. It's clear to every pedestrian who has to travel on the streets. Counsel, I understand that, but isn't that the problem? The problem is that essentially when you put in the interest of traffic safety, it's hard for me to say, well, anybody who's on the street is going to be making it difficult for motorists. There's just no doubt about it. So the question is, does Seattle have a preference, and indeed the ultimate result, that most parades, we're going to wind up on sidewalks? And is that consistent with the jurisprudence of the First Amendment, which says the people have the right to be on the streets to express their First Amendment points of view. They can't be shunted off onto the sidewalks unless there are good reasons to do so. And if you invoke traffic safety and pedestrian safety, the police are going to win every time on that basis, it seems to me. No, Your Honor. Placing marchers on the sidewalk only occurs when it's unsafe to place marchers in the street. How do we know that? Your Honor. That's the objective. A trier of fact can weigh expert testimony, traffic experts. They can judge whether police have been acting properly within the scope of their duties, training, and expertise. They can reach a conclusion after listening to the testimony of witnesses whether conditions reasonably called for modification because So basically you're saying this survives facial challenge, that the language in the interest of traffic safety is sufficient to cabin unfettered discretion, and we graft upon the appellate process through the special events permit. Therefore, the only avenue to attack this statute would be as an individual as applied challenges. Your Honor, traffic safety is not vague. But wait a minute. Please answer my question. Yeah, you can evaluate expert testimony, but that's not what we're looking at on a facial challenge. Your Honor, there's two methods of appeal. You can have an appeal with a decision in five days if it's done beforehand. As far as on-the-spot decisions made for safety reasons, those would only be subject to an as-applied challenge. But the standard of vehicular and pedestrian traffic safety provides a sufficient standard for an as-applied challenge. The other thing is you said that the police chief has articulated a series of objective criteria. Yes. Are those written down anywhere? No, they're not. So how do we know that the next chief of police will – was it Chief Kierlikowski who was testifying? Yes, Your Honor. Police chiefs have a notoriously short lifespan in office. Five years is, I think, the average. And I'm not being facetious. If it's this police chief's attitude that those are objective criteria, that's why I asked, is he the authoritative, binding, administrative interpretation that is binding on this ordinance for facial purposes, or does it reflect the viewpoint of the incumbent police chief only? I would say it's binding authority, Your Honor. And so if the next police chief comes in under Seattle ordinances and practices, can the next police chief have a different set of criteria? Your Honor, this is not in the record, but we are currently drafting rules based on the police department's practice as articulated by the chief. That's terrific. And that's, I think, isn't that what the plaintiffs are looking for in this case? They may be. So is this a case that would be susceptible to mediation at this point? You've already gone through one mediation to get to the first part. Is there something in this arrangement that the city and the plaintiffs can accommodate their mutual interests? At one point, Your Honor, we did believe so. You don't think that's a viable option now? I'm only raising it because you're saying you're in the process of going through proposed regulations. The mediation actually did deal with that very subject, Your Honor, and was unsuccessful. Okay. All right. But getting back to the state of the law as it is now, the chief of police interpretation, and if we look at even in the Berger case where they said when considering a facial challenge, you may consider past practice and the agency's interpretation, the police chief's interpretation that objective factors have to be considered and that a standard of reasonableness has to be imposed is that binding interpretation. I know, but if we look at past practice, then we have to deal with, don't we, the record that the district court noted indicates in the past there seems to be a higher percentage of restrictions placed on other than large parades. So why don't we look to that to say that there has been some form of past practice of discriminatory application? Because that is a wrong analysis of undisputed facts in the record in this case, Your Honor. What the record does show is that during the period leading up to October 22, 2003, there were 29, at least 29, political parade permits that had no minimum numbers imposed on them, and that belies the appellant's argument that the police had a policy of placing minimum numbers just because it was a political march. Traffic safety is an easily discernible standard. Police are expert at conducting traffic. I would not feel comfortable getting into the middle of the street and trying to direct traffic. Police have extensive and consistent training. The practice of the police department also demands a consistent level of expertise because only lieutenants and higher are assigned the supervision of parades. A jury can judge. Counsel, I mean, usually the enforcement on First Amendment protests or marches are usually carried out by police. So, therefore, if we follow your line of reasoning, it doesn't take much to allow police to have fairly large discretion. And I don't think that's what the jurisprudence allows. I think there have to be objective standards. And the question is whether the standards are implicit enough in the language used in the ordinance as written. If I may answer, Your Honor, they are implicit enough. We have an entire state traffic code. It would be anomalous or a heavy burden to have to write into a parade permit ordinance something along the lines of the state traffic code. The words traffic safety or pedestrian and vehicular traffic safety sufficiently narrow, more narrow than the standard used in Thomas v. Chicago, can be tested by a jury because everyone knows what traffic safety means. Every licensed driver knows what traffic means. Every pedestrian, every traffic engineer, every trainer of police in training of how to conduct traffic knows what traffic safety means, and it can be tested by a jury. It's a sufficient and definite standard. And Seattle's ordinance is one of the most restrictive as far as discretion. No denial of a parade permit, no revocation, no fee, and limited time, place, and manner restrictions based on a very well-defined standard, traffic safety. Thank you. Thank you. Thank you. I'd like to address several points. First, I want to reiterate that what our challenge is, is we are essentially appealing the denial of our injunctive and declaratory relief claims. Now, that may fall under the purview of a facial challenge. There's more to it than just a pure facial challenge. Now, one thing I want to talk about is Mr. Hsu said that we look to. I guess I'm not sure I understand that. Well, we were. I mean, yes, we believe the statute should be facially declared unconstitutional, but it was. You don't get an injunction if you don't establish that, do you? In joining the statute from being applied against our clients in a manner how it's been done in the past. With respect to Chief Kurlikowski, the city has stated that he sets the policy of the city. The problem with that is that Chief Kurlikowski, at his deposition, specifically testified that one of the factors that the city considers when making a modification is, quote, unquote, the nature of what's being marched or talked about, and that's in the supplemental excerpts record at page four and on our reply brief at 13. So the city has essentially admitted it has a content-based policy or considers content-based or the content of the message when it's making a decision. I'd also like to touch briefly upon the difference between a sidewalk and a street in terms of a political protest march. A sidewalk is simply not an ample alternative to a street in the context of a sidewalk march. When you're in the street, it's empowering. You're able to unfurl large banners. You're able to essentially get everyone to see your message, and that's part and parcel to why political parades are so important. There's a cultural and historical significance to them, which simply does not exist when you are placed on the sidewalk. I see that my time is up. If you have any more questions. I don't think so. Thank you. Thank you, counsel. It's an interesting case, and we appreciate both sides' arguments. The case is submitted.
judges: Fisher, Gould, Ikuta